**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

JOE HORSELY,                                                    Case No. 1:11-cv-703

                Plaintiff,                                Barrett, J.
                                                               Bowman, M.J.

     v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Joe Horsely filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents five claims of error, all of which the Defendant disputes.  For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I.  Summary of Administrative Record**

On April 29, 2009, Plaintiff filed an application for Disability Insurance Benefits (DIB) alleging a disability onset date of August 15, 2008, due to physical and mental impairments.  (Tr. 122-24, 127-28).[1]  After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law

---

[1] In a previous decision, an ALJ found that Plaintiff was disabled between December 2004 and March 2008, but that he was capable of work beginning on April 1, 2008. (Tr. 65-72). Notably, Plaintiff sustained a back injury while working and underwent lumbar fusion surgery in July 2007. Plaintiff recovered well from the surgery and his treating physician recommended that he return to work in April 2008.  (Tr. 279).

1

Judge ("ALJ").  On April 18, 2011, ALJ Lorenzo Level held a video evidentiary hearing at which Plaintiff appeared with counsel in Portsmouth, Ohio and the ALJ presided over the hearing in Chicago, Illinois.   (Tr. 25-59).  A vocational expert, Jennifer Turecki was also present and testified.   On September 22, 2011, ALJ Level denied Plaintiff's application in a written decision.  (Tr. 9-20).

The record on which the ALJ's decision was based reflects that Plaintiff was 34 years old on his alleged disability onset date, and had a limited education. (Tr. 19). Plaintiff had past relevant work as a construction worker and paving machine operator. (Tr. 19).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "degenerative disk disease, status post back surgery and borderline intellectual functioning." (Tr. 11).  The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1.  The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform sedentary work with the following conditions:

> He must have an option to change positions at the workstation and stand as needed.  He can occasionally balance, stoop, crouch, and climb ramps and stairs. He can never kneel, crawl, and climb ladders, ropes, and scaffolds.  He is limited to understanding, remembering, and carrying out simple instructions, and performing simple tasks.

(Tr. 14).  Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, while the Plaintiff is unable to perform his past relevant work, he can nonetheless perform jobs that exist in significant numbers in the national economy, such

as bench assembler, surveillance system monitor and plastics sorter.  (Tr. 19-20).

Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the

Social Security Regulations, and is not entitled to DIB. *Id.*

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's

decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff

argues that the ALJ erred by: 1) failing to comply with SSR 96-8p and 96-9p in

determining Plaintiff's RFC; 2) failing to give controlling weight to the opinion of

Plaintiff's treating physician; 3) evaluating Plaintiff's neck, arm and hand impairments; 4)

evaluating Plaintiff's subjective complaints of pain; and 5) committing various vocational

errors.  Upon close analysis, I conclude that none of the asserted errors require reversal

or remand.

## II.  Analysis

### A.  Judicial Standard of Review

To be eligible for DIB a claimant must be under a "disability" within the definition

of the Social Security Act.  *See* 42 U.S.C. §§423(a), (d), 1382c(a).  The definition of the

term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New*

*York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability"

includes only physical or mental impairments that are both "medically determinable" and

severe enough to prevent the applicant from (1) performing his or her past job and (2)

engaging in "substantial gainful activity" that is available in the regional or national

economies.  *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the

court's first inquiry is to determine whether the ALJ's non-disability finding is supported

by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national

economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

**B.  Specific Errors**

*1.  The ALJ's Sit-Stand Limitation*

Plaintiff's first assignment of error asserts that the ALJ's RFC finding is not substantially supported.  Specifically, Plaintiff asserts that under Social Security Ruling 96-9p, the ALJ must be specific as to how often the claimant must alternate between sitting and standing.  As noted above, the ALJ's RFC assessment included a limitation that required Plaintiff to have the option to alternative between sitting and standing "as needed."  (Tr. 14).  Plaintiff asserts that the ALJ failed to specifically identify how often and how frequently he must alternate between sitting and standing to do the three unskilled sedentary jobs he found Plaintiff capable of performing.  Plaintiff's contention is unavailing.

As noted by the Commissioner, sedentary work, by definition, involves lifting no more than ten pounds at a time, occasionally lifting or carrying articles like docket files, ledgers, and small tools, and the ability to remain in a seated position for approximately six hours of an eight-hour workday.  *See* 20 C.F.R. § 404.1567(a*); see also* SSR 96-9p,

1996 WL 37418, *6.  In the present case, the ALJ's identification of jobs was premised upon VE testimony that was tailored to the plaintiff's actual exertional and nonexertional limitations.  As noted by the Commissioner, the ALJ also reasonably translated his RFC finding into the hypothetical question for the vocational expert.  Notably, at the administrative hearing, the ALJ specifically asked the vocational expert if whether an individual would be able to perform sedentary jobs in if he were required to have the option to change positions and stand as needed.  (Tr. 56).  The vocational expert testified that such jobs would allow standing as needed.  *Id.*  The Sixth Circuit has specifically affirmed the Commissioner's decision where a VE testified that a claimant who is limited to sedentary work with a sit-stand option can nevertheless perform a significant number of jobs in the national economy.  *See Bradley v. Secretary*, 862 F.2d 1224 (6th Cir. 1988).

Because the ALJ reasonably limited Plaintiff to sedentary work and reasonably specified the frequency at which Plaintiff could alternate between sitting and standing, Plaintiff's challenges lack merit, and the ALJ's RFC finding should not be disturbed.

2. *Weight to Treating Physician*

Plaintiff's next assignment of error asserts that the ALJ failed to properly evaluate the opinion of Dr. Siegel, his treating physician. Notably, in evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner of Social Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson* v. *Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004).  If the ALJ

6

does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician.  *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion."  20 C.F.R. § 404.1527(d)(2); *but see Tilley v. Comm'r of Soc. Sec.*, No. 09–6081, 2010 WL 3521928, at *6 (6th Cir. Aug.31, 2010) (indicating that, under *Blakely* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision).

As such, the opinions of treating and examining sources are generally entitled to more weight than opinions of consulting and non-examining sources. 20 C.F.R. § 404.1527(d); see *also West v. Comm'r Soc. Sec. Admin.*, 240 Fed. Appx. 692, 696 (6th Cir. 2007) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981)) ("[R]eports from treating physicians generally are given more weight than reports from consulting physicians ...."). However, an ALJ need not credit a treating physician opinion that is conclusory and unsupported.  *See Anderson v. Comm'r Soc. Sec.*, 195 Fed. Appx. 366, 370 (6th Cir. 2006) ("The ALJ concluded, properly in our view, that the [treating physician's] treatment notes did not support and were inconsistent with his conclusory assertion that appellant was disabled."); *see also Kidd v. Comm'r of Soc.*

7

*Sec.*, 283 Fed. Appx. 336, 340 (6th Cir. 2008) (citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994)) (holding that an ALJ need not credit a treating physician's conclusory opinions that are inconsistent with other evidence).

Here, the record contains treatment notes from Dr. Siegel from April 2008 through February 2011.  (Tr. 338-350, 404-14, 542-72).  The ALJ's decision indicates that despite mild objective physical findings, Dr. Siegel continued to treat Plaintiff regularly with a diagnosis of L4-L5 degenerative disc disease, aggravation, preexisting; T11-T12 herniated disc; and lumbar sprain and strain and thoracic sprain and strain. (Tr. 16).  Dr. Siegel treated Plaintiff with opioid medication for pain control as well as adjunct medication and therapy to maintain his quality of life.  *Id.*  The ALJ further noted that Dr. Siegel's notes reveal that Plaintiff's condition was controlled by medication.  (Tr. 17, 356-61, 363, 365, 407, 565).  Ultimately, upon review of Dr. Siegel's treatment notes and the record as a whole, the ALJ determined that the objective medical evidence does not indicate an impairment that would cause significant functional limitations.  (Tr. 17).

Plaintiff, however, appears to assert that Dr. Siegel's opinions should have been given greater weight by the ALJ.  Plaintiff asserts that Dr. Siegel's treatment notes show abnormalities to the low back and legs along with neck and thoracic abnormalities and problems using the arms and hands.  He further asserts that Dr. Siegel's treatment notes do not show that Plaintiff received any lasting relief from treatments.  Notably, in May 2009, Dr. Siegel stated that Plaintiff was unable to work "at this time" and unable to engage in sustained activities of daily living. (Tr. 368).  Plaintiff argues that the ALJ's decision is not substantially supported because he failed to discuss Dr. Siegel's finding

that Plaintiff could not work and he failed to give good reasons for rejecting Dr. Siegel's disabling limitations.  Plaintiff's assertions lack merit.

As noted by the Commissioner, medical opinions are statements from physicians or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including his symptoms, diagnosis and prognosis, and an assessment of what the claimant can still do despite those impairments.  20 C.F.R. § 404.1527(a)(2).  Here, the limitations outlined by Plaintiff were based on his reported subjective complaints and were not the opinions of Dr. Siegel.

Moreover, to the extent that Dr. Siegel provided an opinion in May 2009 that Plaintiff was unable to work "at this time," the ALJ's failure to mention this offhand remark was harmless error.  *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed.Appx. 462, 472 (6th Cir. 2006) (ALJ's failure to directly address the conclusions of a treating physician amounted to harmless error).  Furthermore, Dr. Siegel's statement was not entitled to controlling weight.  Notably, the Act requires impairments to be disabling for twelve full months. 42 U.S.C. § 423(d)(1)(A), (2)(A); 20 C.F.R. §§ 404.1505(a), 404.1509.  Here, there is no evidence that Dr. Siegel limited Plaintiff for any twelve month period or intended his May 2009 statement to be a broad prohibition on Plaintiff's ability to work.  To the contrary, one month later in June 2009, Plaintiff reported that he was able to perform household chores and continue with his activities of daily living.  Thus, upon close inspection the undersigned finds that the ALJ properly evaluated the opinion evidence of record, including the findings of Dr. Siegel.

### 3. Arm, Neck and Hand Impairments

Plaintiff's third assignment of error asserts that the ALJ erred by failing to find any functional limitations associated with Plaintiff's arm, neck and hand impairments. Plaintiff asserts that the objective medical evidence shows that he suffers from degenerative disc disease at C5-6 in the cervical spine, cervical radiculopathy, disc protrusions at C3 through C-7, stenosis at C5-6, numbness in arms and hands and carpal tunnel syndrome. Plaintiff asserts that such impairments, when viewed in combination, prevent him from performing substantial gainful activity.

Contrary to Plaintiff's assertions, a mere diagnosis or catalogue of symptoms does not indicate functional limitations caused by the impairment. S*ee Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146,151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment). Here, Plaintiff has not cited any medical opinion that shows greater limitations than those found by the ALJ. As noted by the ALJ, the record indicates that Plaintiff complained of neck pain in 2009, however, at that time, Dr. Kramer noted that Plaintiff's strength in both upper extremities was fairly good and that he had no other abnormal findings. (Tr. 271). Dr. Kramer found "no evidence or radiculopathy or myelopathy" and "would not suggest that we even consider scanning this neck at this point." *Id.* Dr. Kramer did not believe that anything more could be done for Plaintiff's neck complaints unless there was a dramatic change. *Id.* As the ALJ pointed out, the record did not demonstrate that any dramatic change occurred. (Tr. 17). Although an MRI from June 2010 revealed some abnormal findings in Plaintiff's cervical spine (Tr. 571), the ALJ observed that these findings were similar to the results from an August 2008 test which revealed degenerative disc disease in the cervical

spine.  (Tr. 257).  As further noted by the ALJ, the record also contains a consultative examination performed by Dr. Herr, wherein he found normal range of motion in the cervical spine, shoulders, elbows, wrists and hands.  Dr. Herr also found no evidence of atrophy or wasting.  (Tr. 357).

With respect to Plaintiff's arm and hand impairments, the ALJ noted that the record contained evidence relating to Plaintiff's complaints of weakness in the arms and carpal tunnel syndrome.  (Tr. 14-15).  Notably, in February 2011, an EMG of Plaintiff's arm yielded abnormal results and revealed moderate right carpal tunnel syndrome affecting sensory and motor components.  (Tr. 569).  Although Plaintiff testified at the administrative hearing that he had recently undergone right carpal tunnel release surgery, the record does not contain any subsequent treatment notes relating to this impairment.  (Tr. 41-42).  As noted above, in order to show disability, Plaintiff must show that his impairments were disabling for twelve full months. 42 U.S.C. § 423(d)(1)(A), (2)(A); 20 C.F.R. §§ 404.1505(a), 404.1509.   Accordingly, based on the recent diagnosis, the ALJ properly concluded that Plaintiff's carpal tunnel syndrome fails to constitute a severe impairment.

Here, the record does not establish that such impairments resulted in any greater functional limitations than those found by the ALJ.  Notably, although the state agency doctors determined that Plaintiff was capable of performing medium and light work, the ALJ limited Plaintiff to sedentary work in light of Plaintiff's recent neck impairments.  (Tr. 18).  Thus, the ALJ's RFC finding is more restrictive than the opinions provided by the state agency doctors who reviewed Plaintiff's medical record.  In light of the foregoing

the undersigned finds that the ALJ properly evaluated Plaintiff's neck, arm and hand impairments. Accordingly, the ALJ's decision is substantially supported in this regard.

    4. *Credibility*

    Plaintiff next charges that the ALJ's credibility finding is not supported by the record. In this regard, Plaintiff asserts that the ALJ erred by discounting his subjective complaints based upon a purported lack of objective evidence to support such complaints. Plaintiff also argues that the ALJ's credibility determination failed to properly consider the factors outlined in 20 CFR 404.1529. Plaintiff's assertions will be addressed in turn.

    It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of HHS*, 753 F.2d 517, 519 (6th Cir. 1985). In this regard, Social Security Ruling 96-7p explains:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An

12

> individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96-7p.

In addition, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id.  The ALJ's credibility decision must also include consideration of the following factors:  1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  See 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-7p.

While an ALJ may properly consider a Plaintiff's inconsistent statements and other inconsistencies in the record, the ALJ must also consider other factors listed in SSR 96-7p, and may not selectively reference a portion of the record which casts Plaintiff in a capable light to the exclusion of those portions of the record which do not.

13

*See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240-41 (6th Cir. 2002).  Further, a credibility determination cannot be disturbed "absent a compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence.  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 392.

Contrary to Plaintiff's contentions, the ALJ properly considered the requisite factors in making his credibility determination.  Here, the ALJ found that Plaintiff's subjective complaints of disabling pain were not fully credible.  (Tr. 15).  In discussing Plaintiff's credibility, the ALJ found that the record did do not support his allegations of total disability.  (Tr. 16).  Specifically, the ALJ found that the objective medical evidence showed only mild findings and/or no abnormalities.  (Tr. 16-18).  Notably, Dr. Siegel declined to recommend more aggressive forms of treatment such as surgery or a recommendation to see a specialist (Tr. 17).  The ALJ also noted that the record indicated that Plaintiff's pain was adequately controlled with medication.  In addition, the ALJ also properly considered that Plaintiff was able to maintain independence and maintain a basic level of functioning.  (Tr. 17).  *See Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain.").  *See also Heston v. Com'r*, 245 F.3d 528, 536 (6th Cir. 2001) (ALJ may consider claimant's testimony of limitations in light of other evidence of claimant's ability to perform tasks such as walking, going to church, going on vacation, cooking, vacuuming and making beds).

Based on the foregoing, the undersigned finds that the ALJ's decision adequately sets forth the reasons for his credibility finding and shows he considered the required factors in determining plaintiff's credibility. *See* 20 C.F.R. § 416.929(c). In light of the ALJ's opportunity to observe plaintiff's demeanor, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Kirk*, 667 F.2d at 538. *See also Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997); *Gaffney v. Bowen*, 825 F.2d 98, 101 (6th Cir.1987). Accordingly, the Court finds substantial evidence supports the ALJ's credibility finding in this matter.

   5.  *Alleged Vocational Errors*

Plaintiff's final assignment of error asserts that the ALJ committed various vocational errors. Namely, Plaintiff asserts that the ALJ's hypothetical questions to the vocational expert failed to include limitations associated with his neck and thoracic spine impairments, problems using his hands and his borderline intellectual functioning. Plaintiff further asserts that he is unable to perform the jobs identified by the vocational expert as such jobs are inconsistent with the classifications listed in Dictionary of Occupations titles. Each assertion will be addressed in turn.

   1.  *Hypothetical Questions*

The Sixth Circuit has held that a hypothetical question must only include a claimant's credible impairments and limitations. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) (emphasis added); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Here, the ALJ's hypothetical question was supported by the medical record and other evidence, and Plaintiff has not shown that he had limitations

greater than those reflected in the ALJ's hypothetical question and eventual RFC finding. Plaintiff contends that the hypothetical question omitted limitations that addressed his neck and thoracic spine abnormalities and his inability to use his arms and hands forty hours per week. However, as discussed above, the medical evidence did not support these alleged limitations, and there is no medical opinion that shows that Plaintiff had greater limitations than the ALJ found.

Citing *Ealy v. Commissioner*, 594 F.3d 504 (6th Cir. 2009), Plaintiff further asserts that the ALJ's hypothetical question failed to properly accommodate Plaintiff's moderate limitations on persistence and pace. In *Ealy*, the Sixth Circuit found that where medical source opinions specifically limited Plaintiff's ability to sustain attention and imposed restrictions in pace, speed and concentration, the ALJ's "streamlined" hypothetical omitting those restrictions was insufficient. *Id.* Notably, however, several post-*Ealy* decisions declined to adopt a bright line rule that a limitation to "simple repetitive tasks" in an RFC and hypothetical to the VE is not adequate to address a claimant's moderate impairment as to concentration, persistence, and pace. *See Steed v. Astrue*, No. 4:11CV204, 2012 WL 1097003, at *9 (N.D. Ohio Mar. 30, 2012); *Jackson v. Comm'r of Soc. Sec.*, No. 1:10CV763, 2011 WL 4943966, at *4 (N.D. Ohio Oct.18, 2011). Here, no medical source imposed any restrictions relating to pace, speed and concentration, as is *in Ealy*, and Plaintiff offers no additional evidence or argument in support of this contention. Accordingly, Plaintiff's assertion should be overruled in this regard.

*2. Dictionary of Occupational Titles*

Plaintiff also asserts the VE's testimony conflicts with the Dictionarey of Occupational Titles ("DOT") and therefore demonstrates that the ALJ's decision at step five of the sequential evaluation process is not supported by substantial evidence.  As noted above, the vocational expert testified that a hypothetical individual with Plaintiff's functional limitations could perform such sedentary jobs as bench assembler, surveillance system monitor and plastics sorter.  Plaintiff argues, however that the DOT defines bench assembler and plastics sorter as jobs performed at the "light" level.  With respect to the surveillance system monitor job, Plaintiff maintains his RFF precludes this job because the DOT listing of this position includes a reasoning level of three.[2] Plaintiff's arguments are unavailing.

Plaintiff argues that the DOT description of surveillance system monitor requires a higher level of reasoning than that required for "simple unskilled" work.  Because the VE's testimony was inconsistent with the job description listed in the DOT, Plaintiff asserts that the ALJ's reliance on the VE testimony is not supported by substantial evidence.  *See Marchitto v. Astrue*, 208-CV-148-FTM-DNF, 2009 WL 804620 (M.D. Fla. Mar. 27, 2009).  The Sixth Circuit has held, however, that an ALJ may rely on VE

---

[2] The DOT assigns each job a General Educational Development score, which "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance."  Dep't of Labor, Dictionary of Occupational Titles, App'x C(III), 1991 WL 688702 (G.P.O.) (4th ed., rev'd 1991). The GED scale is composed of three divisions-reasoning development, mathematical development, and language development.  *Id.*  Reasoning Development Level 3 jobs require an individual to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations."  *Heffelfinger v. Astrue*, 1:10CV2892, 2012 WL 1004722 (N.D. Ohio Mar. 23, 2012) (citing Dep't of Labor, Dictionary of Occupational Titles, App'x C(III), 1991 WL 688702 (G.P.O.) (4th ed., rev'd 1991)).

testimony even if there is an apparent conflict between the VE's testimony and the DOT. See *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009).

Notably, the ALJ has a duty under Social Security Ruling 00–4p to develop the record and ensure there is consistency between the VE's testimony and the DOT and "inquire on the record, as to whether or not there is such consistency." SSR 00–4p. Where, the ALJ questions the VE and the VE testifies that there is no conflict with the DOT, the Sixth Circuit has held that the ALJ is under no further obligation to interrogate the VE, especially where the plaintiff is afforded a full opportunity to cross-examine the VE. See *Lindsley v. Comm'r of Soc. Sec.,* 560 F.3d 601, 606 (6th Cir.2009). The ALJ is only required to develop the record further where the conflict between the DOT and the VE's testimony is apparent. *Id.*; *See also* SSR 00–4p ("If the VE's ... evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.").

Here, the vocational expert expressly testified that a hypothetical person with Plaintiff's physical and mental limitations would be able to perform the jobs identified above. (Tr. 56-57). The ALJ inquired, "has your testimony been consistent with the Dictionary of Occupational Titles?" The VE responded, "Yes, your Honor". (Tr. 56). Plaintiff's counsel did not question the VE about any apparent inconsistencies between the testimony and the DOT relating to reasoning levels, nor did counsel bring any potential conflicts to the ALJ's attention after the hearing. Counsel was afforded a full opportunity to cross-examine the vocational expert and the ALJ had no affirmative duty under SSR 00–4p to conduct his own interrogation of the VE to determine the accuracy of the vocational testimony. *See Lindsley*, 560 F.3d at 606 (citing *Martin v.*

*Commissioner of Social Security*, 170 F. App'x 369, 374 (6th Cir. 2006) ("Nothing in S.S.R. 00–4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.")). Because the ALJ specifically asked the VE if her testimony was consistent with the DOT and the uncontradicted testimony of the VE indicated that no conflict existed, the ALJ did not err by relying on such testimony in finding other jobs plaintiff could perform. *Id.*

Furthermore, the "D.O.T. lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00–4p (emphasis added). In other words, the reasoning levels listed in the DOT reflect the maximum requirements for the sedentary jobs listed by the VE, and not the range of specific requirements an individual must satisfy to perform the jobs. See *Hall v. Chater*, 109 F.3d 1255, 1259 (5th Cir. 1997) (not every job identified by a VE will actually "have requirements identical to or as rigorous as those listed in the D.O.T."); *see also French v. Astrue*, No. 2:08–cv–15, 2009 WL 151525, at *8 (E.D. Ky. Jan. 20, 2009) ("the DOT defaults to the highest physical demand level required by the job"). Social Security Ruling 00–4p recognizes that a VE "may be able to provide more specific information about jobs or occupations than the DOT." SSR 00–4p. Thus, the ALJ could reasonably rely on the VE's testimony that Plaintiff could perform the jobs identified at step five of the sequential evaluation process despite the DOT's listing of reasoning level three for such jobs. Accordingly, the ALJ's decision is substantially supported in this regard.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JOE HORSELY,                                        Case No. 1:11-cv-703

                    Plaintiff,                       Barrett, J.
                                                     Bowman, M.J.
            v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.


**NOTICE**

        Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written

objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of

the filing date of this R&R.  That period may be extended further by the Court on timely

motion by either side for an extension of time.  All objections shall specify the portion(s)

of the R&R objected to, and shall be accompanied by a memorandum of law in support

of the objections.  A party shall respond to an opponent's objections within **FOURTEEN**

**(14) DAYS** after being served with a copy of those objections.  Failure to make

objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas*

*v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).